UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD HEJMANOWSKI,

                Plaintiff,

        v.

PAUL BYKOWICZ,
TRISHA BYKOWICZ,
UNIVERSAL TOOL & STAMPING CO., INC.,
DURA OPERATING CORP., and
DURA AUTOMOTIVE SYSTEMS, INC.,

                Defendants.

**DECISION AND ORDER**
09-CV-915A

---

## INTRODUCTION

Defendants Universal Tool & Stamping Co., Inc., Dura Operating Corp., and Dura Automotive Systems, Inc. (the "Dura Defendants") have made a motion (Dkt. No. 5) to dismiss plaintiff's complaint. The Dura Defendants have argued that the commencement of this case against them violates orders of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") that enjoy injunctive protection under the Bankruptcy Code. In response, plaintiff made a cross-motion (Dkt. No. 11) for a continuance pursuant to Rule 56(f)(2) of the Federal Rules of Civil Procedure ("FRCP"). At oral argument on January 8, 2010, plaintiff asserted that litigation against the Dura Defendants should continue to determine their liability for purposes of seeking payment from their

excess insurance carrier.  For the reasons below, the Court will grant the Dura Defendants' motion and deny plaintiff's cross-motion.

## BACKGROUND

This case is a personal injury case that began in state court.  Plaintiff is a citizen of Ohio.  The individual defendants are citizens of New York.  The Dura Defendants do business in New York.  According to the complaint, plaintiff was injured on October 7, 2006 when a "scissors jack," i.e., the type of jack often installed with spare tires in cars (*see* Dkt. No. 13-2 at 5-6), broke and a car tire fell on his right hand.  Plaintiff filed his complaint on September 24, 2009 in New York State Supreme Court, Erie County.  The complaint included allegations of negligence against the individual defendants and of defective design, manufacture, assembly, specification, distribution, testing, inspection, warnings, and instructions against the Dura Defendants.

The pending motions stem from events involving the Dura Defendants that occurred between the time of the accident and the filing of plaintiff's complaint.  On October 30, 2006, the Dura Defendants and a number of their affiliates and subsidiaries filed for Chapter 11 bankruptcy reorganization.  On February 23, 2007, the Bankruptcy Court entered an order establishing a deadline for the filing of proofs of claim against the Dura Defendants.  This deadline or "General Bar Date" was May 1, 2007 at 6:00 p.m. Pacific Time.  The General Bar Date was published in *The Wall Street Journal* on March 6, 2007; in the *Detroit News and*

*Free Press* on March 5, 2007; in *Automotive News* on March 12, 2007; in the *Financial Times* in London, Frankfurt, Paris, Tokyo, Sweden, Madrid, and Hong Kong on March 6, 2007; and in *The New York Times* on March 5, 2007. On May 13, 2008, the Bankruptcy Court entered a final order approving and confirming the Dura Defendants' Reorganization Plan in its entirety. Article IX(F) of the Reorganization Plan contained an injunction that prohibited the commencement or continuation of any claims against the Dura Defendants as of June 27, 2008, the effective date of that plan. Plaintiff has not alleged that the Dura Defendants could have known about his accident at any time during the bankruptcy proceedings. Plaintiff also has not alleged that, in the nearly three years between his accident and the filing of his complaint, he conducted research on the Dura Defendants that was reasonably calculated to uncover the bankruptcy proceedings.

On October 27, 2009, the Dura Defendants removed this case to this Court with the consent of the individual defendants. On October 29, 2009, the Dura Defendants made the pending motion to dismiss pursuant to FRCP 12(b)(6). In support of the motion, the Dura Defendants argued that their bankruptcy discharge operates as a complete bar to this case as against them. In opposition to the motion to dismiss and in support of his own cross-motion for a continuance, plaintiff argued that the case should be allowed to proceed only to determine liability as against the Dura Defendants. Plaintiff cited to cases holding that

liability can be determined in spite of a bankruptcy discharge where any damages would be paid entirely by an insurance carrier and not the debtor. The Dura Defendants responded to plaintiff's cross-motion by providing their insurance policy information voluntarily. At oral argument, the Dura Defendants argued that the policy information makes clear that they are self-insured up to $750,000, and that the insurance policy that they hold is an excess policy only. The Dura Defendants argued that any duty to defend or to indemnify under the excess policy does not begin without at least a reasonable possibility of a damages award over $750,000, and that a damages award of that size is virtually impossible under the facts of this case. Under these circumstances, the Dura Defendants argued, they should not have to bear the costs of litigating a case with no reasonable possibility of triggering the excess coverage, because incurring those costs would contravene the purpose of the bankruptcy discharge.

## DISCUSSION

### *Plaintiff's Cross-Motion for Continuance / Conversion*

Through its cross-motion for a continuance, plaintiff has asked the Court to convert the Dura Defendants' motion to dismiss into a motion for summary judgment. Plaintiff seeks this conversion to permit discovery and also because the Dura Defendants have submitted extensive documentation outside the four corners of the complaint. "Our review [of a motion to dismiss] is generally limited to the facts and allegations that are contained in the complaint and in any

4

documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits. But we may also look to public records, including complaints filed in state court, in deciding a motion to dismiss." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citations omitted). Here, the orders and associated documents from the Dura Defendants' case before the Bankruptcy Court are public documents, and the Court may consider them without the need for conversion. There is only one other fact outside of the complaint and the public records that the Court finds relevant to the resolution of the pending motions: the basic fact, apart from any details of the excess coverage policy, that the Dura Defendants are self-insured up to $750,000. "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment; [t]his discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action." *Carione v. U.S.*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (alteration in the original) (citation omitted). Plaintiff did not contest the presence of self-insurance at oral argument. Since there is no dispute about the presence or the amount of self-insurance, conversion will not

5

accomplish anything more relative to that fact. Accordingly, the Court declines to use its discretion to convert the motion to dismiss and denies plaintiff's cross-motion.

### *Motion to Dismiss*

"On a motion to dismiss or for judgment on the pleadings we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (internal quotation marks and citation omitted). Bearing in mind that all of plaintiff's allegations are deemed true for purposes of this motion, the Court now will address the issue of the Dura Defendants' bankruptcy discharge. Central to a resolution of the pending motion to dismiss is what effect, if any, the bankruptcy discharge has on plaintiff's ability to litigate against the Dura Defendants.

"Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a [reorganization] plan . . . discharges the debtor from any debt that arose before the date of such confirmation . . . ." 11 U.S.C. § 1141(d)(1)(A). "A discharge in a case under this title (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 1141 . . . of this title, whether or not discharge of such debt is waived; [and] (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an

act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a). Here, the Dura Defendants duly filed a bankruptcy petition within weeks of plaintiff's accident. The public records available from the Bankruptcy Court indicate that the Dura Defendants gave the best notice that they could to any creditors whose identities were reasonably ascertainable. For entirely unknown creditors such as plaintiff, the Dura Defendants reasonably gave constructive notice in multiple national and international publications in accordance with directions from the Bankruptcy Court. *Cf. In re U.S.H. Corp. of N.Y.*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) ("When a creditor is unknown to the debtor, publication notice of the claims bar date may satisfy the requirements of due process . . . . [A]ctual notice is necessary only as to known creditors while constructive notice is sufficient for unknown creditors.") (citations omitted). The bankruptcy proceedings concluded without incident, with final confirmation of the Reorganization Plan that the Dura Defendants submitted to the Bankruptcy Court. The injunctive protection of Sections 1141 and 524 thus apply to the Dura Defendants.

The injunction exception provided in Section 524(e) will not apply here because of the presence of self-insurance. Generally, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). This exception has formed the

7

basis for rulings that have allowed determinations of liability against debtors whose insurance carriers will bear the full cost of any judgments entered against them. See, e.g., Green v. Welsh, 956 F.2d 30, 35 (2d Cir. 1992) ("[W]e believe that § 524 permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer."); Cantor v. Am. Banknote Corp., No. 06 Civ. 1392, 2007 WL 3084966, at *7 (S.D.N.Y. Oct. 22, 2007) ("As Plaintiff is proceeding only to recover any available liability insurance proceeds, [the debtor's] discharge would not bar her claim . . . ."). Here, however, there is no dispute that the Dura Defendants are self-insured up to $750,000. In any judgment issued against the Dura Defendants in this case, that money would have to be used first. There is no way to construe any excess policy, any finding of liability, or any judgment to avoid this basic point.[1] Cf. DePippo v. Kmart Corp., 335 B.R. 290, 298 (S.D.N.Y. 2005) ("Kmart does not maintain primary liability insurance. Its only insurance provides coverage above a two-million-dollar self-insured retention. Therefore, because Kmart's debt has been discharged in bankruptcy, there is no money to cover plaintiff's claim. Moreover, if the action against Kmart were permitted to proceed, it would have to pay litigation costs, which is contrary to the fresh start policy of the Bankruptcy Code.") (citations omitted); In re Columbia Gas Transmission Corp., 219 B.R. 716, 720 (S.D.W. Va.

---

[1] For this reason, the Court considers irrelevant how large a damages award could be.

1998) ("The instant case differs markedly from [*Green* among other cases]. First, instead of a primary insurer, only an excess insurer is available, one whose liability is not triggered until [the debtor] is 'legally obligated to pay' a sum. [The debtor] argues it will never be legally obligated to pay a sum in this case, because Plaintiff's claim was discharged in bankruptcy. Moreover, [the debtor], not a primary insurer, is responsible for the defense of the lawsuit.") (citation omitted). As a result, there is no way to allow a determination of liability to proceed without violating Section 524(a)(2). Any judgment entered against the Dura Defendants in this case, regardless of plaintiff's intent not to collect against them directly, would be *void ab initio* under Section 524(a)(1). Under these circumstances, continuing this case as against the Dura Defendants would be an expensive academic exercise that would serve no purpose. Granting the motion to dismiss will avoid this waste.

**CONCLUSION**

For all of the foregoing reasons, the Court hereby grants the Dura Defendants' motion to dismiss (Dkt. No. 5). Plaintiff's cross-motion (Dkt. No. 11) is denied. The Clerk of the Court is directed to terminate defendants Universal Tool & Stamping Co., Inc., Dura Operating Corp., and Dura Automotive Systems, Inc., from this case and to amend the caption accordingly. This case will remain open as against defendants Paul Bykowicz and Trisha Bykowicz.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: January 13, 2010